IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHAL DIVISION

| | | |
|---|---|---|
| KOJICAST, LLC, | § | |
| | § | |
| Plaintiff | § | CIVIL ACTION NO. 2:18-cv-00519 |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| DAILYMOTION S.A., | § | |
| | § | |
| Defendant | § | |

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Kojicast, LLC ("Kojicast") as and for its original complaint against defendant Dailymotion S.A. ("Defendant"), alleges as follows:

**THE PARTIES**

1. Kojicast, LLC is a Texas LLC having a principal place of business at 6220 Bentwood Trail #1705, Dallas, Collin County, Texas 75252.

2. Upon information and belief, Defendant Dailymotion S.A. is a French limited company (société anonyme) headquartered in Paris, France.

3. Upon information and belief, Defendant offers products, including those accused herein of infringement, to customers and/or potential customers located in Texas and elsewhere in the United States. Among other things, Defendant engages in marketing activities that promote the use of the Defendant's video delivery platform.

**JURISDICTION AND VENUE**

4. Kojicast brings this action for patent infringement under the patent laws of the United States, 35 U.S.C. § 271 et seq. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a) and 1367.

5.	Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(c)(3) and 1400(b). Because Defendant is not a resident in the United States, it may be sued in any judicial district.  Upon information and belief, Defendant has committed acts of infringement in this judicial district, and/or have purposely transacted business involving the accused products in this judicial district, including sales to one or more customers in the State of Texas.

6.	Defendant is subject to this Court's jurisdiction pursuant to due process and/or the Texas Long Arm Statute due at least to its substantial business in this State and judicial district, including: (A) at least part of its past infringing activities, (B) regularly doing or soliciting business in Texas, and/or (C) engaging in persistent conduct and/or deriving substantial revenue from goods and services provided to customers in Texas.

## THE PATENTS-IN-SUIT

1.	Kojicast is the owner of U.S. Patent No. 9,749,380 ("the '380 Patent"), entitled MEDIA ASSET STREAMING OVER NETWORK TO DEVICES that issued on August 29, 2017 and claims priority to an application filed on March 5, 2012.  The first-listed inventor of the '3087Patent is Koji Yoden of Japan.  A true and correct copy of the '122 Patent is attached as Exhibit A hereto.

2.	Kojicast is the owner of U.S. Patent No. 9,961,122 ("the '122 Patent"), entitled MEDIA ASSET STREAMING OVER NETWORK TO DEVICES that issued on May 1, 2018 and claims priority to an application filed on March 5, 2012.  The first-listed inventor of the '122 Patent is Koji Yoden of Japan.  A true and correct copy of the '122 Patent is attached as Exhibit B hereto.

3.	Kojicast is the owner of U.S. Patent No. 9,986,006 ("the '006 Patent"), entitled MEDIA ASSET STREAMING OVER NETWORK TO DEVICES that issued on May 29, 2018 and claims priority to an application filed on March 5, 2012.  The first-listed inventor of the '006

Patent is Koji Yoden of Japan.   A true and correct copy of the '006 Patent is attached as Exhibit C hereto.  Collectively, the '380 Patent, the '122 Patent, and the '006 Patent are the "Patents-in-Suit."

4. The U.S. Patent and Trademark Office (USPTO) cited and considered more than seventy (70) references before it determined that the inventions in the Patents-in-Suit deserved patent protection. Among those references include patents and/or patent applications of Apple, Google, Ericsson, Microsoft, Sony, LG, Comcast, AT&T, Intel, Sony, Yahoo, Nokia, Adobe, Blackberry, Broadcom, Comcast, Alcatel, and Intel.

5. The claims of the Patents-in-Suit are novel and non-obviousness.

6. The methods, systems, and operational capability recited in the claims of the Patents-in-Suit are not conventional or generic.

7. The Patents-in-Suit addresses multiple different problems. One of those problem involves a scenario where a user of a mobile device (e.g., a mobile phone) is streaming media content (e.g., a movie or a video) from a server (e.g., the cloud) to the mobile phone. However, the user desires to switch the streaming destination and instead stream the same media content (e.g. the movie or the video) from the server to a TV. Conventionally, mobile devices had no ability to select among multiple streaming destinations. Accordingly, the user had to put down the mobile phone (effectively stopping the streaming) and then launch an application on a different device specifically designed to stream to the TV. For example, a user could launch a Roku device connected to the TV. In this process, the user had to hope that he or she could find the same video and, also, had the same streaming service on the Roku device that was being used on  the mobile device.

8. With reference to the preceding paragraph, for example, the user may have been watching a YouTube video on his or her phone via a mobile device application such as YouTube. To access the same movie or video through the Roku device (connected to the TV), the user would need to first ensure that a YouTube application was installed on the Roku device and, also, provide sign-in credentials. Then, the user would need to navigate through the on-screen Roku interface to find the same movie or video – hoping that he or she could find it and, ultimately, advance the video to the same spot he or she was previously watching on the mobile phone. If the user decided to switch streaming back to the mobile device instead of streaming to Roku, the opposite would occur. Rokus streaming would stop, and the user would attempt to find the same more or video on the mobile phone – again encountering a similarly trouble-some process.

9. The inventor of the Patents-in-Suit, Koji Yoden, recognized that this inability to select among streaming destinations and actively switch between the two was cumbersome. Yet, no one had solved the problem of making them less cumbersome. Accordingly, through the teachings of the '683 Patent, Koji Yoden devised a way whereby the mobile phone, server, and TV could all be modified to communicate with one another to allow a user to select among multiple destinations thereby, for example, allowing one to switch the streaming of the media content to the mobile device to a streaming of the same media content to the TV.

10. Additionally, to make things incredibly easy on the user, Koji Yoden taught in the Patents-in-Suit how to modify the mobile phone, server, and TV to allow control of such interactions directly from the mobile phone. For example, a user could select on a graphical user interface of the mobile phone to switch a streaming to the television. Then, after a user switches streaming to the TV, the mobile phone user maintains control and watches progress information

on the mobile phone. This is because the servers were modified to simultaneously send progress information to the mobile phone while, also, streaming content to the TV.

11. Koji Yoden further taught in the Patent-in-Suit how switching of streaming destinations could occur multiple times from the mobile phone. For example, after switching to the TV, the user via the mobile phone could switch streaming back to the mobile phone or to another TV, for example in the next room.  Such concepts advantageously allowed a user to initially stream a  movie or video to a mobile phone (e.g., during a commute)  and then seamlessly switch to a TV at home directly through the mobile phone. Then, after watching on one TV, the user could further switch to a second TV in the home (or another home) through further interaction on the mobile phone.

12. Koji Yoden further taught how monitoring of connections between these devices (server, mobile phone, and TV) allowed a ceasing of streaming, for example, when the streaming server could no longer reach the mobile  device.

13. The Patents-in-Suit additionally addressed a problem whereby streaming servers could not switch the ultimate destinations of streaming content based on control from a mobile device.  Accordingly, Koji Yoden taught how streaming servers could be modified to selectively switch the streaming from different devices, for example, as may be indicated by different IP addresses.

14. Additionally, Koji Yoden taught how such streaming servers could maintain contact with multiple different devices – providing streamed content to one device and progress information to another device.

15. While new at the time he developed it, Koji Yoden's inventions are now generally referred to in the industry as "casting" – something Dailymotion acknowledges is a "somewhat

more recent feature of media streaming." Rather than simply describe a "pie in the sky" implementation of such inventions, Koji Yoden laboriously described in detail in a patent covering ninety-seven (97) pages how these three devices could be modified to allow such a switching and mobile device control. For example, through FIGURES 9-26, 35-40, 43-45, 47-51, 61-62, and 65-66 and the associated text, Koji Yoden explained how these devices (mobile phone, server, and TV) communicate with one another, using what engineers refer to as "call flows" – whereupon arrowed lines represent communicated information back and forth between devices.  In FIGURES 1-5 and associated text, Koji Yoden provided architectural diagrams and further explained the interaction between the mobile phone, server, and TV occur. Additionally, in the remaining figures and associated text, Koji Yoden explained among other things, how the graphical user interface could be used control and switch between different destinations.

16. After examining Koji Yoden's claims in the Patent-in-Suit in light of these seventy (70) references, the USPTO decided to allow the Patents-in-Suit. In exchange for Koji Yoden's inventive contribution to society, the '380 Patent, the '122 Patent, and the '006 Patent and were granted.

17. The USPTO determined that claims of the Patents-in-Suit were new under 35 U.S.C. §102 et. seq.

18. The USPTO determined that claims of the Patents-in-Suit were non-obvious under 35 U.S.C. §103 et. seq.

19. The USPTO determined that claims of the Patents-in-Suit contained patentable subject matter under 35 U.S.C. §101.

20. The claims of the Patents-in-Suit were examined after the 2014 supreme court decision in *Alice Corp. v. CLS Bank International*, 573 U.S. 208 (2014).

21. No existing computer technology had the functionality described in the claims of the Patents-in-Suit. Indeed, the USPTO could find no such disclosures.

22. The Patents-in-Suit do not pre-empt all methods of streaming. For example, a user may engage in traditional streaming to a mobile phone or traditional streaming to a television – using the cumbersome process that existed before Koji Yoden's invention. This is how Dailymotion's system operated prior to adopting the technology of the Patent-in-Suit.

23. More specifically, despite publicly acknowledging that it is "one of the oldest players in the video streaming business" and "uploaded its first video in April 2005," Dailymotion did not start using the features of the Patent-in-Suit until May of 2015 when it pronounced "DAILYMOTION IS NOW AVAILABLE ON CHROMECAST!" *See* https://blog.dailymotion.com/en/dailymotion-is-now-available-on-chromecast (Emphasis in original). In enabling this functionality, Dailymotion modified its servers and had to have users download a modified Dailymotion application for the Android and iOS mobile devices. Dailymotion could not simply use its already existing software on its servers to enable such switched streaming.

24. The claims of the Patents-in-Suit do not simply say "apply it" to an abstract concept. Rather, they describe multiple improvements to computer systems, namely the particular interactions that occur between different machines with discrete IP addresses and how streaming servers can maintain communications with multiple different devices.

25. The USPTO's April 2018 memo to the Patent Examining Corp explained the impact of Federal Circuit's Decision in *Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018) and the corresponding required evidence to show something was abstract. In particular, the USPTO recognized that in the patentable subject matter inquiry, the evidence required more than

just a showing that something was disclosed in the prior art. Rather, the evidence must show that something was "well-understood, routine, and conventional."

> Specifically, the Federal Circuit held that "[w]hether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent is a factual determination." Id. at 1369.
>
> . . .
>
> As the Federal Circuit explained: "[w]hether a particular technology is well-understood, routine, and conventional goes beyond what was simply known in the prior art. The mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional." Berkheimer, 881 F.3d at 1369.

**Source**: https://www.uspto.gov/sites/default/files/documents/memo-berkheimer-20180419.PDF (Emphasis added).

26. To this end, the USPTO issued training material guidance in April 2018 to its Patent Examining Corp in the context of a patentable matter subject matter determination – look for something that is "widely prevalent or in common use in the relevant industry."

> – An examiner should conclude that an element (or combination of elements) is well-understood, routine, conventional activity **only** when the examiner can readily conclude that the element(s) is widely prevalent or in common use in the relevant industry, as explained in MPEP § 2106.05(d)(I)
> – **NEW:** Conclusion must be based upon factual determinations
>
> uspto

**Source**: https://www.uspto.gov/sites/default/files/documents/berkheimer-training-20180427.pptx

27. The claim elements of the Patent-in-Suit are neither "widely prevalent or in common use in the relevant industry" nor are they "well-understood, routine, and conventional." As evidenced by the examination process of the Patents-in-Suit, the features of the claims were not even disclosed by the seventy (70) references already considered.

28.

29. Claim 1 of the '380 Patent requires:

A mobile user device, comprising:

communication circuitry through which to establish a first communication over the Internet with a server storing a media content and through which to establish a second communication over a close-range communication network with a media playback device, wherein the server and the media playback device are identified by respective discrete IP addresses distinct from the mobile user device;

a processor; and

a memory storing a computer program including instructions which, when executed by the processor, cause the mobile user device to perform operations comprising:

invoking one of a first streaming that delivers the media content destined to the mobile user device and a second streaming that delivers the media content destined to the media playback device;

when the first streaming is invoked, receiving the first streaming from the server over the first communication, and playing back the streamed media content on a first graphical user interface;

when the second streaming is invoked and the streamed media content is played back by the media playback device based on the second streaming, receiving progress information indicative of progress of the ongoing second streaming from the media playback device over the second communication, and displaying how far the media content is played within a duration of the media content on a second graphical user interface based on the progress information.

Conventional technologies, including those encountered during the prosecution history from companies such as of Apple, Google, Ericsson, Microsoft, Sony, LG, Comcast, AT&T, Intel, Sony, Yahoo, Nokia, Adobe, Blackberry, Broadcom, Comcast, Alcatel, and Intel, did not disclose in a well-understood, routine, and conventional manner "communication circuitry through which to establish a first communication over the Internet with a server storing a media content and through which to establish a second communication over a close-range communication network with a media playback device, wherein the server and the media playback device are identified by respective discrete IP addresses distinct from the mobile user device," "invoking one of a first streaming that delivers the media content destined to the mobile user device and a second

streaming that delivers the media content destined to the media playback device," "when the first streaming is invoked, receiving the first streaming from the server over the first communication, and playing back the streamed media content on a first graphical user interface," or "when the second streaming is invoked and the streamed media content is played back by the media playback device based on the second streaming, receiving progress information indicative of progress of the ongoing second streaming from the media playback device over the second communication, and displaying how far the media content is played within a duration of the media content on a second graphical user interface based on the progress information."

30.     Claim 1 of the '006 Patent requires:

> A method of providing streaming media content, the method comprising:
>
> receiving a first request from a mobile communication device at a server;
>
> sending media content information from the server to the mobile communication device responsive to the first request, the media content information indicative of a plurality of media content items;
>
> receiving, at the server, a second request for a first media content item of the plurality of media content items from a media playback device, wherein the mobile communication device is associated with a first internet protocol (IP) address, and wherein the media playback device is associated with a second IP address that is different than the first IP address; and
>
> responsive to receipt of the second request for the first media content item, sending a stream of the first media content item to the media playback device to enable playback of the first media content item at the media playback device while progress information related to the playback of the first media content item is displayed at the mobile communication device.

Conventional technologies, including those encountered during the prosecution history from companies such as of Apple, Google, Ericsson, Microsoft, Sony, LG, Comcast, AT&T, Intel, Sony, Yahoo, Nokia, Adobe, Blackberry, Broadcom, Comcast, Alcatel, and Intel, did not disclose in a well-understood, routine, and conventional manner "receiving, at the server, a

second request for a first media content item of the plurality of media content items from a media playback device, wherein the mobile communication device is associated with a first internet protocol (IP) address, and wherein the media playback device is associated with a second IP address that is different than the first IP address," or "responsive to receipt of the second request for the first media content item, sending a stream of the first media content item to the media playback device to enable playback of the first media content item at the media playback device while progress information related to the playback of the first media content item is displayed at the mobile communication device."

    31.    Claim 1 of the '122 Patent requires:

> A server comprising:
>
> an interface configured to communicate with a mobile communication device and to communicate with a media playback device, wherein the mobile communication device is associated with a first internet protocol (IP) address, and wherein the media playback device is associated with a second IP address that is different than the first IP address;
>
> a processor; and
>
> a memory coupled to the processor and storing instructions that, when executed by the processor, cause the processor to perform operations comprising:
>
> initiating transmission of media content information indicative of a plurality of media content items to the mobile communication device in response to receipt of a first request from the mobile communication device; and
>
> responsive to a second request for a first media content item of the plurality of media content items from the media playback device, initiating transmission of a stream of the first media content item to the media playback device to enable playback of the first media content item at the media playback device while progress information related to the playback of the first media content item is displayed at the mobile communication device.

Conventional technologies, including those encountered during the prosecution history from companies such as of Apple, Google, Ericsson, Microsoft, Sony, LG, Comcast, AT&T, Intel, Sony, Yahoo, Nokia, Adobe, Blackberry, Broadcom, Comcast, Alcatel, and Intel, did not

disclose in a well-understood, routine, and conventional manner "an interface configured to communicate with a mobile communication device and to communicate with a media playback device, wherein the mobile communication device is associated with a first internet protocol (IP) address, and wherein the media playback device is associated with a second IP address that is different than the first IP address," "initiating transmission of media content information indicative of a plurality of media content items to the mobile communication device in response to receipt of a first request from the mobile communication device," or "responsive to a second request for a first media content item of the plurality of media content items from the media playback device, initiating transmission of a stream of the first media content item to the media playback device to enable playback of the first media content item at the media playback device while progress information related to the playback of the first media content item is displayed at the mobile communication device."

## COUNT I
(INFRINGEMENT OF U.S. PATENT NO. 9,749,380)

1. Kojicast incorporates by reference the above paragraphs.

2. Defendant has marketed its video delivery platform under its brand name "Dailymotion," as well as possibly other brand names. The following is discussion of the accused Dailymotion system. Dailymotion has apps for mobile communication devices, including an app for Apple IOS operating systems and an app for Android operating systems. The Dailymotion app supports casting features, enabling a user to watch a selected media content item on the mobile communication device or "casted" to one or more media playback devices.

3. On the Android platform, Defendant's app has been installed more than fifty-million (50,000,000) times.

4. Upon information and belief, Defendant's app has also been installed more than more than fifty-million (50,000,000) times.

5. Through its video streaming platform, in the United States, Defendant has one thirty-eight million (138,000,000) video views per month and more than six-million (6,000,00) unique browsers per month on mobile.

6. To enable its platform to users in the United States and Texas, Defendant has servers throughout the United States.

7. One of Defendant's streaming server facilities is located in New York, NY and has the following Autonomous System (AN) Number, AS41690.

8. AS41690 include IP addresses at the range, 198.54.200.0 to 198.54.201.255

9. Defendant has directly infringed and continues to directly infringe one or more claims of the '380 Patent, including at least Claim 1, in this judicial district and elsewhere in Texas, literally and/or under the doctrine of equivalents, by or through making, using, importing, offering for sale and/or selling one or more versions of the accused systems during the pendency of the '380 Patent.

10. Defendant has also indirectly infringed and continues to indirectly infringe one or more claims of the '380 Patent, including at least Claim 1, in this judicial district and elsewhere in the Texas by, among other things, actively inducing the using, offering for sale, selling, and/or importing Defendant's systems. Defendant's customers who purchase and use such Dailymotion's app directly infringe one or more of the above identified claims of the '380 Patent in violation of 35 U.S.C. § 271. Defendant directly and/or indirectly intentionally instructs its customers to infringe through training videos, demonstrations, brochures, installation and/or user guides such as those located at one or more of the following:

- http://dai.ly/google-play
- http://dai.ly/itunes
- https://faq.dailymotion.com/hc/en-us/articles/115010348767-Our-Video-Player

11. Defendant also indirectly infringed and continues to indirectly infringe one or more claims of the '380 Patent, including at least Claim 1, in this judicial district and elsewhere in the Texas by, among other things, contributing to the direct infringement by others including, without limitation customers use the accused systems, by making, offering to sell, selling and/or importing into the United States, a component of a patented machine, manufacture or combination, or an apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in infringing the '683 Patent and not a staple article or commodity of commerce suitable for substantial non-infringing use.

12. For example, the accused systems are a component of a patented machine, manufacture, or combination, or an apparatus for use in practicing a patent process. Furthermore, the system is a material part of the claimed inventions and upon information and belief is not a staple article or commodity of commerce suitable for substantial noninfringing use. Defendant is therefore, liable for infringement under 35 U.S.C. § 271(c).

13. Defendant is on notice of the '380 Patent since at least October 2018 and, at the latest, since the service of this complaint. By the time of trial, Defendant will have known and intended (since receiving such notice), that its continued actions would actively induce and contribute to actual infringement of one or more claims of the '380 Patent, including at least Claim 1.

14.     Defendant may have infringed the '380 Patent through other products, currently unknown to Kojicast, utilizing the same or reasonably similar functionality, including other versions of the accused systems. Kojicast reserves the right to discover and pursue all such additional infringing products.

15.     Kojicast has been damaged by Defendant's infringement of the '380 Patent.

## COUNT II
(INFRINGEMENT OF U.S. PATENT NO. 9,961,122)

16.     Defendant has directly infringed and continues to directly infringe one or more claims of the '122 Patent, including at least Claim 1, in this judicial district and elsewhere in Texas, literally and/or under the doctrine of equivalents, by or through making, using, importing, offering for sale and/or selling one or more versions of the accused systems during the pendency of the '122 Patent.

17.     Defendant has also indirectly infringed and continues to indirectly infringe one or more claims of the '122 Patent, including at least Claim 1, in this judicial district and elsewhere in the Texas by, among other things, actively inducing the using, offering for sale, selling, and/or importing Defendant's systems. Defendant's customers who purchase and use such Dailymotion's app directly infringe one or more of the above identified claims of the '122 Patent in violation of 35 U.S.C. § 271.  Defendant directly and/or indirectly intentionally instructs its customers to infringe through training videos, demonstrations, brochures, installation and/or user guides such as those located at one or more of the following:

- http://dai.ly/google-play
- http://dai.ly/itunes
- https://faq.dailymotion.com/hc/en-us/articles/115010348767-Our-Video-Player

18. Defendant also indirectly infringed and continues to indirectly infringe one or more claims of the '122 Patent, including at least Claim 1, in this judicial district and elsewhere in the Texas by, among other things, contributing to the direct infringement by others including, without limitation customers use the accused systems, by making, offering to sell, selling and/or importing into the United States, a component of a patented machine, manufacture or combination, or an apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in infringing the '122 Patent and not a staple article or commodity of commerce suitable for substantial non-infringing use.

19. For example, the accused systems are a component of a patented machine, manufacture, or combination, or an apparatus for use in practicing a patent process. Furthermore, the system is a material part of the claimed inventions and upon information and belief is not a staple article or commodity of commerce suitable for substantial noninfringing use. Defendant is therefore, liable for infringement under 35 U.S.C. § 271(c).

20. Defendant is on notice of the '122 Patent since at least October 2018 and, at the latest, the service of this complaint. By the time of trial, Defendant will have known and intended (since receiving such notice), that its continued actions would actively induce and contribute to actual infringement of one or more claims of the '122 Patent, including at least Claim 1.

21. Defendant may have infringed the '122 Patent through other products, currently unknown to Kojicast, utilizing the same or reasonably similar functionality, including other versions of the accused systems. Kojicast reserves the right to discover and pursue all such additional infringing products.

22. Kojicast has been damaged by Defendant's infringement of the '122 Patent.

## COUNT III

(INFRINGEMENT OF U.S. PATENT NO. 9,986,006)

23.     Defendant has directly infringed and continues to directly infringe one or more claims of the '006 Patent, including at least Claim 1, in this judicial district and elsewhere in Texas, literally and/or under the doctrine of equivalents, by or through making, using, importing, offering for sale and/or selling one or more versions of the accused systems during the pendency of the '006 Patent.

24.     Defendant has also indirectly infringed and continues to indirectly infringe one or more claims of the '006 Patent, including at least Claim 1, in this judicial district and elsewhere in the Texas by, among other things, actively inducing the using, offering for sale, selling, and/or importing Defendant's systems. Defendant's customers who purchase and use such Dailymotion's app directly infringe one or more of the above identified claims of the '006 Patent in violation of 35 U.S.C. § 271. Defendant directly and/or indirectly intentionally instructs its customers to infringe through training videos, demonstrations, brochures, installation and/or user guides such as those located at one or more of the following:

- http://dai.ly/google-play
- http://dai.ly/itunes
- https://faq.dailymotion.com/hc/en-us/articles/115010348767-Our-Video-Player

25.     Defendant also indirectly infringed and continues to indirectly infringe one or more claims of the '006 Patent, including at least Claim 1, in this judicial district and elsewhere in the Texas by, among other things, contributing to the direct infringement by others including, without limitation customers use the accused systems, by making, offering to sell, selling and/or importing into the United States, a component of a patented machine, manufacture or combination, or an apparatus for use in practicing a patented process, constituting a material part of the

invention, knowing the same to be especially made or especially adapted for use in infringing the '006 Patent and not a staple article or commodity of commerce suitable for substantial non-infringing use.

26. For example, the accused systems are a component of a patented machine, manufacture, or combination, or an apparatus for use in practicing a patent process. Furthermore, the system is a material part of the claimed inventions and upon information and belief is not a staple article or commodity of commerce suitable for substantial noninfringing use. Defendant is therefore, liable for infringement under 35 U.S.C. § 271(c).

27. Defendant is on notice of the '006 Patent since at least October 2018 and, at the latest, since the service of this complaint. By the time of trial, Defendant will have known and intended (since receiving such notice), that its continued actions would actively induce and contribute to actual infringement of one or more claims of the '006 Patent, including at least Claim 1.

28. Defendant may have infringed the '006 Patent through other products, currently unknown to Kojicast, utilizing the same or reasonably similar functionality, including other versions of the accused systems. Kojicast reserves the right to discover and pursue all such additional infringing products.

29. Kojicast has been damaged by Defendant's infringement of the '006 Patent.

## PRAYER FOR RELIEF

Kojicast requests that the Court enter judgment against Defendant as follows:

(A) that Defendant have infringed the '380 Patent, the '122 Patent, and the '006 Patent;

(B) awarding Kojicast its damages suffered as a result of Defendant's infringement of the '380 Patent, the '122 Patent, and the '006 Patent pursuant to 35 U.S.C. § 284;

(C) enjoining Defendant, its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries and parents, and all others acting in concert or privity with it from infringing the '380 Patent, the '122 Patent, and the '006 Patent pursuant to 35 U.S.C. § 283;

(D) awarding Kojicast its costs, attorneys' fees, expenses and interest; and

(E) granting Kojicast such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Kojicast hereby demands trial by jury on all issues so triable pursuant to Fed. R. Civ. P. 38.

Dated: November 21, 2018    Respectfully submitted,

*/s/ James L. Etheridge*

James L. Etheridge
Texas State Bar No. 24059147
Ryan S. Loveless
Texas State Bar No. 24036997
Brett A. Mangrum
Texas State Bar No. 24065671
Travis L. Richins
Texas State Bar No. 24061296
Jeffrey Huang
ETHERIDGE LAW GROUP, PLLC
2600 E. Southlake Blvd., Suite 120 / 324
Southlake, Texas 76092
Telephone: (817) 470-7249
Facsimile: (817) 887-5950
Jim@EtheridgeLaw.com
Ryan@EtheridgeLaw.com
Brett@EtheridgeLaw.com
Travis@EtheridgeLaw.com
Jeff@EtheridgeLaw.com

**Counsel for Plaintiff Kojicast**